1  ROBERT WAGGENER - SBN: 118450
   LAW OFFICE OF ROBERT WAGGENER
2  214 Duboce Avenue
   San Francisco, California 94103
3  Phone:      (415) 431-4500
   Fax:        (415) 255-8631
4  E-Mail:     rwlaw@mindspring.com

5  Attorney for Defendant DEMARCUS HICKS

6

7                    **UNITED STATES DISTRICT COURT**

8                  **NORTHERN DISTRICT OF CALIFORNIA**

9

10  UNITED STATES OF AMERICA              **No. CR 20-0108-005 JD**

11                         Plaintiff,     **DEFENDANT DEMARCUS HICKS'**
                                          **SENTENCING MEMORANDUM**
12         v.
                                          Date:      September 12, 2022
13  DEMARCUS HICKS,                       Time:      10:30 a.m.
                                          Judge:     Honorable James Donato
14                         Defendant.
                                     /
15

16

17  To:  **THE UNITED STATES DISTRICT COURT; ASSISTANT UNITED STATES**
        **ATTORNEY DAVID WARD AND BARBARA JOAN VALLIERE; AND TO THE**
18      **CLERK OF THE COURT:**

19                         **INTRODUCTION**

20        Thirty eight year old defendant DEMARCUS HICKS appears before this Court for

21  sentencing following his convictions of of Conspiracy to Commit Wire Fraud and Bank Fraud in

22  violation of 18 U.S.C.§ 1349 (Count One), Bank Fraud in violation of 18 U.S.C. § 1344(l)(2)

23  (Count 7), and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) (Count 29).

24  The Presentence Report (PSR) was prepared by United States Probation Officer Denise Mancia

25  and she has calculated Mr. Hicks' guideline Total Offense Level at 20, with a Criminal History

26

27

28

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**

Category III, with an advisory guideline range of 41-51 months.[1]  Ms. Mancia has recommended that Mr. Hicks be sentenced to a total of 48 months in custody, in the upper range of the advisory calculation.  For reasons stated herein, defendant Demarcus Hicks submits that his Total Offense Level should be 18 as contemplated by the parties in their plea agreement, and that he should be sentenced at the low end of the advisory range of 33-41months for a CHC III. A 33 month sentence for Mr. Hicks is a fair, just, and appropriate punishment for his criminal conduct.

Factual issues regarding the content of the PSR have not completely been resolved and are discussed herein.  All parties are in agreement that Mr. Hicks is a Criminal History Category III. Factors set forth in 18 U.S.C. §3553 regarding Mr. Hicks and his personal background are discussed below. It is submitted that Mr. Hicks is deserving of a 33 month sentence for all the reasons stated.

## I.
## THE OFFENSE CONDUCT

Mark Hicks is Demarcus Hicks' half brother, and his co-defendant and co-conspirator. Co-defendants Dionysius ("Donnie") Costello and Tyrone Jones are associates of Demarcus Hicks, and Tyrone Jones (currently a fugitive) is a blood-related cousin.  The four defendants acted together in the basic schemes set out in the indictment, with wheelchair-bound Mark Hicks in the center of the conspiratorial circle.  Each of these four defendants had separate and distinct roles in the scheme, and of the four, Demarcus Hicks is submitted to have had the lesser role of the principal orchestrators of the scheme. The "worker" defendants, Susan Arreola-Martin, Christopher Pool, and Leif Skorochod, essentially impersonated identity theft victims, and are

---

[1] The parties agreed to a 2 level reduction pursuant to USSG §5K2.0(a)(2)(B) for a Global Disposition, resulting in a Total Offense Level of 18.  Within the body of the PSR the probation officer takes no position on the Global Disposition departure (PSR ¶ 5),  but then does not reference the departure in the sentencing recommendation.

**DEFENDANT DEMARCUS HICKS'
SENTENCING MEMORANDUM          -2-**

fairly considered to be in a different category than the principal schemers. Defendant Demarcus Hicks interacted with the "worker" defendants and helped facilitate their fraudulent conduct, but he was not responsible for their recruitment, directions, and compensation, as were the other principal schemers.

Defendant Demarcus Hicks fully acknowledges his role in the overall scheme, linked particularly with his connection to his half-brother, Mark Hicks, who was the main puppeteer in the scheme. Demarcus Hicks entered into a detailed plea agreement in this case, which set out his individualized role in the overall scheme. The specifics of Demarcus Hicks' criminal conduct role are set out in paragraph 26 through 30 of the PSR, all derived from the admissions in his plea agreement. Defendant Demarcus Hicks' objection to factual portions of the PSR, set out in the Addendum to the Presentence Report, essentially amount to distinctions between a general summary of the scheme and the specific activities of Demarcus Hicks. In the Probation Officer's Response within the Addendum, the officer says that paragraphs 15-25 of the PSR consist of the government's summarized information as to the discovery, and then defers to the Court "to make a sound and appropriate finding as to the disputed information by the defendant." The probation officer basically punts the issue to the Court, not sorting out the inherent differences between the summary and the parties' specific statements as to defendant Demarcus Hicks' role in the scheme, as set out in paragraphs 26-29 of the PSR.

The reason that defendant Demarcus Hicks is making a factual objection is to assure accuracy in the PSR and to make sure that the Court understands Demarcus Hicks' overall culpability in the scheme. The two main points of contention are Demarcus Hicks' direction of the "worker" defendants, and his role in the gold transactions with the El Cerrito jewelry store owner. The Addendum contains the specifics of defendant's factual objections, but the gist is

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**          -3-

that Demarcus Hicks was not the one directing the actions of the "worker" defendants, and he was a facilitator of the gold transactions, rather than the one negotiating and directing the deals with the jewelry store owner.  A prime example of the over generalization of the actual conduct of Demarcus Hicks is the statement at the end of paragraph 25 in the PSR that "Demarcus Hicks retrieved $937,000 in gold bars that were the proceeds of the fraud against IT Victim #9, and thereafter sold the gold bars and coins to H. Bee Jewelry, a jewelry store in El Cerrito and obtained approximately $400,000 in cash from the sale of the gold bars and coins." Attributing the purchase and profit from the gold bars and coins solely to Demarcus Hicks is simply not accurate or fair. Demarcus Hicks did not control the fraudulent loan proceeds used to purchase the gold, he did not order the gold, he did not deliver the gold, and he did not negotiate the sale of the gold with the jeweler. Yes, Demarcus Hicks interacted with the jeweler and was given $400,000 in cash from the jeweler for the sale of the gold, but what he then did is deliver that cash to his half-brother, where it eventually ended up in a safe-deposit box over which Demarcus Hicks had no control. In other words, Demarcus Hicks never actually personally "obtained" $400,000 in cash, he simply acted as a middle man in the transaction, profiting no more than a token fee for his service and some store credit with the jeweler, and then delivering the cash to the main conspirator.

The Court is well aware that the overall scheme in this case involved the fraudulent acquisition of a couple million dollars. Very little of those proceeds made their way to Demarcus Hicks, and he had very little control over the large sums of money obtained through the fraudulent loans. His compensation consisted of small percentage commissions or fees for his criminal tasks, and some store credit with the involved jeweler, through which he acquired some personal jewelry items. A good example of Demarcus Hicks' criminal activity is being tasked

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**          -4-

with withdrawing illegal proceeds from a bank account with an ATM transaction, and then turning over the bulk of the money to a co-conspirator, and receiving a ten percent fee. All tolled, Demarcus Hicks' total profit from his actions in the schemes was less than $30,000 over roughly a two year period. He lived at his grandmother's house and did not acquire any major assets, and did not tuck away any money in bank accounts or safe deposit boxes. He eked out a hand to mouth existence, never achieving the lifestyle of a high level fraudster. In the midst of his criminal conduct, at the age of 34, Mr. Hicks began using cocaine and became addicted, using cocaine on a daily basis up to the time of his arrest. (See PSR ¶ 77) Demarcus Hicks does not deny his involvement in the schemes, but he had a more peripheral role than other defendants, and that should be taken into account in terms of the disputed factual issues, and the Court's evaluation of the appropriate sentence.

## II.
## GUIDELINE CALCULATION

Mr. Hicks has no quarrel with the guideline calculation contained in the PSR, save for the probation officer's failure to account for the parties' agreement that there should be a two-level departure for a Global Disposition pursuant to USSG §5K2.0(a)(2)(B). The two Hicks defendants and defendant Costello simultaneously resolved their cases by plea agreements as a result of good faith negotiations with the government to avoid a trial. The Court should recognize the basis for a departure and determine the Total Offense Level for Demarcus Hicks to be 18. Mr. Hicks' Criminal History Category is correctly calculated as III. Mr. Hicks has two prior felony convictions when he was 23 and 30 years old, with the last conviction occurring seven years ago in 2015 when he was sentenced to eight months in prison for attempted grand theft.

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**          -5-

1
2

### III.
### BACKGROUND OF THE DEFENDANT

3    Mr. Hicks was born and raised in the Bay Area, spending most of his life in Richmond,

4 California. His parents both had substance abuse problems and never really had a stable

5 relationship. Both parents died of heart attacks approximately a dozen years ago. Mr. Hicks was

6 basically raised by his grandparents, and up to the time of his arrest Mr. Hicks was living at the

7 home of his grandmother in Richmond. He grew up in poverty and had a very difficult

8 upbringing. He has a number of siblings in the Bay Area. Mr. Hicks has a GED, and has an

9 employment history as a janitor going back to the time he was 15. Mr. Hicks has had some

10 success in playing and producing music and videos, and it continues to provide him a variable

11 monthly income of around a thousand dollars a month in royalty payments. His aspiration is to

12 find stable employment with benefits, and continue to work on his music career. He has one

13 failed marriage, and does not have any children.

14
15    Demarcus Hicks has some serious health problems, with the biggest issue being that he

16 suffers from Crohn's disease. In February of this year he spent ten days in the hospital for surgery

17 related to his Crohn's disease, and then had to be hospitalized again in March due to surgical

18 complications. The painful condition persists, and after a recent MRI and analysis by his doctors,

19 he is now scheduled to undergo surgery once again on September 27 at John Muir Hospital in

20 Walnut Creek.[2] The condition has limited his ability to work, and he is kept under close

21 observation by his gastrologist until the next surgery can be performed. His recovery time for the

22 surgery is expected to be about six weeks.

23
24
25
26

---

27    [2] Note that the information as to Mr. Hicks's planned surgery has changed since the issuance
of the final PSR. (See, PSR ¶ 72) The surgery was at one point scheduled to take place the week of
28 August 15 at UCSF, but has now been confirmed for September 27 at John Muir Hospital.

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**        -6-

1

2

## IV.
## ANALYSIS PURSUANT TO 18 U.S.C. § 3553(a)
## AND SENTENCING RECOMMENDATION

3

4

The primary directive in § 3553(a) is that the court must impose a sentence that is

5

"sufficient, but not greater than necessary, to comply with" the purposes of sentencing.  *See*, 18

6

U.S.C. § 3553(a) Those purposes include the need:  (1) to provide just punishment; (2) to create

7

adequate deterrence; (3) to protect the public; and (4) to provide the defendant necessary

8

treatment and training.  18 U.S.C. § 3553(a)(2) The Court has discretion to sentence Mr. Hicks

9

below the applicable guideline range as long as the sentence is not unreasonable in light of the

10

other 3553(a) factors.

11

12

Probation officer Mancia has recommended a total custodial term of 48 months for Mr.

13

Hicks, followed by three years of supervised release. The 48 month sentence is inconsistent with

14

the 33 month sentence contemplated by the plea agreement in this case, and is submitted to be

15

unduly harsh and inappropriate. Not only has the probation officer ignored the two level

16

departure for Global Disposition, she has not justified the 48 month upper range sentence for the

17

higher offense level. The probation officer has failed to appreciate or take into account the lesser

18

role of the defendant compared to his principal co-defendants. Mr. Hicks' involvement in the

19

scheme may not qualify for a guideline role adjustment, but his role was more that of a soldier

20

than any sort of leader. He clearly was not the brains of the operation and had little to do with the

21

22

paperwork of the sizable loans, or the management of the money or personnel. He knew what he

23

and the co-conspirators were up to was wrong, but his role was not at the heart of the operation.

24

There was a fraudulent scheme to cheat financial institutions out of a large chunk of money and

25

steal the identities of unwitting victims, but Mr. Hicks realized relatively minimal personal gain

26

27

28

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**         -7-

for his illegal efforts. A sentence of 33 months is submitted to be a sufficient, adequate, and just sentence for Mr. Hicks.

**V.**
**VOLUNTARY SURRENDER**

Mr. Hicks has complied with all conditions of his pretrial release, made all court appearances, and consistently tested clean on his drug tests. United States Probation does not consider him to be a flight risk or a danger to the community. Mr. Hicks has surgery for his Crohn's disease scheduled to take place approximately two weeks after his sentencing date. Placing Mr. Hicks in custody awaiting his designation by the Bureau of Prison would certainly delay his medical treatment and put him at potential risk. For all these reasons it is respectfully requested that Mr. Hicks be allowed to voluntarily surrender at the appropriate facility designated by the Bureau of Prisons.

**CONCLUSION**

For the foregoing reasons, Defendant requests this Court to impose the sentence suggested above, 33 months in custody.  It is unnecessary to impose a fine in this case. As part of the sentence it is requested that the Court recommend to the Bureau of Prisons that Mr. Hicks be housed as close to the Bay Area as possible, and that he be allowed to participate in the RDAP program while in custody.

Dated: August 30, 2022                                      Respectfully submitted,

_____/s/_____
ROBERT WAGGENER
Attorney for Defendant
DEMARCUS HICKS

**DEFENDANT DEMARCUS HICKS'**
**SENTENCING MEMORANDUM**                -8-